## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA

In re:                                    **Case No. 18-11542-SDB**
                                          **Chapter 7**
**Roger Jancaitis**


        Debtor          /

## CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND  TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 AND 330

**James Overstreet**, as Chapter 7 Trustee (the "Trustee") for the above referenced debtor (together, the "Debtor"), by and through the undersigned counsel, files this Application for entry of an order, substantially in the form attached hereto as *Exhibit A*, authorizing retention of (1) BK Global Real Estate Services ("BKRES") under the terms set forth in the agreement (the "BKRES Agreement") attached to BKRES' Affidavit of Disinterestedness at *Exhibit B* (the "BKRES Affidavit") and (2)   ("Listing Agent") under the terms of the agreement (the "Listing Agreement") attached to Listing Agent's Affidavit of Disinterestedness at *Exhibit C* (the "Listing Agent Affidavit").  In support thereof, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

Trustee requests approval to retain BKRES and local licensed Listing Agent (individually and collectively referred to as "Broker or Brokers"), at no cost to the estate, to negotiate with and persuade the first lienholder on certain real property in which the estate has no equity to (1) allow Trustee to sell such property at the highest price that the market will bear, (2) waive the resulting deficiency claim and (3) pay an 11 U.S.C. § 506 surcharge to provide a carveout for the benefit of the estate and pay all other sale expenses, including a 6% brokerage

1

commission that will be shared equally by BKRES and Listing Agent only upon the closing of a sale that is approved by this Court.

BKRES and its affiliates have proprietary technology and a national team of experienced loan servicing specialists, asset managers, negotiators, trustee relation managers, real estate brokers and agents, closing specialists and attorneys with extensive experience in procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and provide significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

The proposed agreements are attached and provide that BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as an 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carveout for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity and (2) expects to obtain Secured Creditor's agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold, within the coming months.

## JURISDICTION

1.     This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

3.     On October 30, 2018, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

4.     Thereafter, the Trustee was appointed as the Chapter 7 trustee in this case.

5.     The Trustee held and concluded the 341 meeting on 11/28/2018.

6.     The Debtor is the sole owner of real property located at **1303 CROW TRAIL EDENTON, NC 27932** (the "Property").

7.     The Debtor has no equity in the Property.  The Debtor's schedules reflect that the Property is currently worth $67,399.19 but is subject to a first mortgage lien (the "Senior Mortgage") in favor of Mr. Cooper (the "Secured Creditor") in an amount exceeding $66,060.88.

8.     The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("Consent") to do the following, with the proviso that the hired professionals, BKRES and Local Agent, shall not participate in the sale and purchase of any estate property except as hired Brokers:

      a.   sell the Property to whichever third-party Trustee determines to have made the best qualified offer during a public sale approved by the Court;

3

    b.  buy the Property from the Debtor's estate if (and only if) no such offer is made[2];

    c.  release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

    d.  agree to a 11 U.S.C. § 506 surcharge to pay all of the customary expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-pocket expenses, and provide a meaningful carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

9.     The Trustee also has determined it to be in the best interest of the Debtor's estate and all creditors to request authorization to engage Brokers BKRES and Listing Agent to provide reasonable and necessary property preservation, maintenance, and upkeep services to the subject estate Property and to reimburse the Brokers in a maximum amount not to exceed $500.00 for any approved reasonable, necessary out-of-pocket costs and expenses incurred by Brokers associated with property preservation, maintenance, and upkeep of the subject Property in connection with a potential sale, upon the availability of funds from the estate, without the need for further Order.

10.    Trustee expects BKRES and Listing Agent to obtain Secured Creditor's full, final and unconditional Consent and bring a separate motion seeking an order approving the

---

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes in order to consistently measure sales confidence and predict market value.

[2] In the event that the Property is not sold to a third party, the Brokers will be paid in accordance with the non-third party sale terms of the BKRES Agreement and Listing Agreement.

sale of the Property (the "Motion to Approve Sale") within several months of the entry of the order sought by this Application.

           11.      By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to provide the necessary professional assistance and representation required by the Trustee to fulfill the Trustee's duties pursuant to 11 U.S.C. § 704 in order to procure Secured Creditor's Consent, (b) engage Brokers BKRES and Listing Agent to provide reasonable and necessary property preservation, maintenance, and upkeep services to the subject estate Property to facilitate the sale of the Property for the benefit of the Secured Creditor(s) and bankruptcy estate, (c) reimburse Brokers in the maximum amount not to exceed $500.00 for any approved, out-of-pocket costs incurred by Brokers associated with property preservation, maintenance, and upkeep of the subject Property in connection with a potential sale, upon the availability of funds from the estate, without the need for further Order, and (d) approve Secured Creditor's payment of the fees described herein and below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

<u>APPLICATION</u>

12.     Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Section 330 of the Bankruptcy Code permits the Court to "award to a trustee... or a professional person employed under section 327...(A) reasonable compensation for actual, necessary services rendered [by such party]... and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

13.     As further described in the materials attached to their affidavits, BKRES[3] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity. [An expedited sale of the estate Property securing an allowed secured claim in this case pursuant to Section 363 of the Bankruptcy Code will enhance the bankruptcy relief sought by the Debtor, provide a recovery of value for the bankruptcy estate that will result in a meaningful distribution to unsecured creditors, and provide direct equitable benefits to the Secured Creditor in the following ways:

        a.      in exchange for an expedited free and clear sale and realization of the current fair market value of the Property by the Secured Creditor, the Debtor's

---

[3] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

estate will be released from the Senior Mortgage and any deficiency claims resulting from the sale;

b.      an expedited free and clear sale of the Property will provide a loss mitigation option that enables the Secured Creditor and Debtor to avoid the substantial expense of foreclosure proceedings and the damaging impact of foreclosure on the financial recovery of the bankrupt Debtors and their ability to obtain future credit;

c.      an expedited free and clear sale of the Property will provide a negotiated cash payment as a meaningful recovery of value for the bankruptcy estate and the unsecured creditors;

d.      an expedited free and clear sale of the Property will eliminate the need for a foreclosure sale and enable the Secured Creditor to limit its expenses to legal costs, property preservation costs, insurance, and taxes; and,

e.      the Debtor's voluntary surrender of the Property to the administration of the Trustee and the Secured Creditor's consent to the sale of the Property will enable the Trustee to use the forces of a free market to establish the true fair market value of the Property for the benefit of all interested and affected parties.]

14.     The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear.  The Trustee further believes that such a sale is in the best interest of the Debtor's estate but can only be achieved if

Secured Creditor's Consent is first obtained.  That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

15.     In no event will the estate have any obligation to pay BKRES or Listing Agent for their services, or to pay for customary title and closing services.  The terms of the BKRES Agreement and Listing Agreement and this Application provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold[4], in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission and obtain reimbursement of any out-of-pocket expenses and payment for all other expenses associated with the sale of the Property from the sale proceeds at closing in accordance with the order approving the sale.

16.     BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

17.     The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and Listing Agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

---

[4] In the event that the Property is not sold to a third party, the Brokers will be paid in accordance with the non-third party sale terms of the BKRES Agreement and Listing Agreement.

8

18.     BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).  Attached hereto as ***Exhibit B*** is an Affidavit of Disinterestedness of BKRES. BKRES also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent, or a buyer's Agent, if applicable. 19.  Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).  Attached hereto as ***Exhibit C*** is an Affidavit of Disinterestedness of Listing Agent.  Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES, or a buyer's Agent, if applicable.

## CONCLUSION

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement and this Application pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code.

Dated:        1/8/2019

/s/ James C. Overstreet, Jr.
James C. Overstreet, Jr.
Attorney for Trustee
Georgia Bar No.  556005

KLOSINSKI OVERSTREET, LLP
1229 Augusta West Parkway
Augusta, Georgia  30909
706-863-2255

10

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing "CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 AND 330" was served upon the parties below by placing a copy of the same in the United States Mail. Postage prepaid and properly addressed as follows:

Roger Jancaitis
1054 Fendley Drive
Tignall, GA 30668

This is to certify that the below-named parties have this day been served a copy of the above-referenced document via CM/ECF electronic mail:

Office of the United States Trustee
E-mail:  Ustpregion21.sv.ecf@usdoj.gov

Cortney Elam
E-mail: crelam@crelamlaw.com

Date:  January 11, 2019.

/s/ James C. Overstreet, Jr.
James C. Overstreet, Jr.

KLOSINSKI OVERSTREET, LLP
1229 Augusta West Parkway
Augusta, Georgia  30909
706-863-2255

17

**Exhibit A**

14

**EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT**
[Consult "Guidelines" (Form 101G) for guidance in completing this form]

This EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT ("Agreement") is entered into between _____ **James Overstreet, BK Trustee , of Roger Jancaitis** _____ as Seller(s) ("Seller") of the property described below (the "Property"), and _____ **CAROLINA EAGLE REAL ESTATE, LLC** _____ as Listing Firm ("Firm"). The individual agent who signs this Agreement shall, on behalf of the Firm, be primarily responsible for ensuring that the Firm's duties hereunder are fulfilled; however, it is understood and agreed that other agents of the Firm may be assigned to fulfill such duties if deemed appropriate by the Firm. For purposes of this Agreement, the term "Firm," as the context may require, shall be deemed to include the individual agent who signs this Agreement and any other agents of the Firm.

In consideration for Firm's services and efforts to find a buyer for the Property, Firm is hereby granted the exclusive right to sell the Property on the terms and conditions set forth in this Agreement.

**Seller represents that as of the Effective Date the Seller is not (or will not be, if the Property is currently listed) a party to a listing agreement with any other real estate firm regarding the Property. Seller also represents that Seller has received a copy of the "WORKING WITH REAL ESTATE AGENTS" brochure and has reviewed it with Firm.**

1.   **TERM OF AGREEMENT.**
      (a) **Term.** The term of this Agreement ("Term") shall begin on its Effective Date and shall end at midnight on its Expiration Date.
      (b) **Effective Date.** This Agreement shall become effective and the Seller and Firm's respective rights and obligations under this Agreement shall commence ("Effective Date") as follows *(check appropriate box)*:
      ☒  The Effective Date shall be the date that this Agreement has been signed by both Seller and Firm
      ☐  The Property is currently listed for sale exclusively with another real estate firm. Seller represents that the current listing agreement expires on _____ . The Effective Date of this Agreement shall commence immediately upon the expiration of the current listing agreement. (NOTE: According to Article 16 of the REALTORS® Code of Ethics: *"REALTORS® shall not engage in any practice or take any action inconsistent with exclusive representation or exclusive brokerage relationship agreements that other REALTORS® have with clients."*)
      (c) **Expiration Date.** This Agreement shall terminate at midnight on _____ ("Expiration Date").

2.   **PROPERTY.** The Property that is the subject of this Agreement shall include all that real estate described below together with all appurtenances thereto including the improvements located thereon and the fixtures and personal property listed in Paragraphs 3 and 4 below.
      Street Address: **1303 Crow Trl** _____
      City: **Edenton** _____    Zip **27932-8047** _____
      County: **Chowan** _____ , North Carolina _____

      | **NOTE:** Governmental authority over taxes, zoning, school districts, utilities and mail delivery may differ from address shown. Legal Description: (Complete *ALL* applicable) |
      | --- |

      •   Plat Reference: Lot/Unit _____ , Block/Section _____ , Subdivision/Condominium _____
      _____ , as shown on Plat Book/Slide _____ at Page(s) _____
      •   The PIN/PID or other identification number of the Property is: **697120807532** _____
      •   Other description: _____
      Some or all of the Property may be described in Deed Book _____ **357** _____ at Page _____ **628** _____

3.   **FIXTURES AND EXCLUSIONS.**
      (a) **Specified Items:** Unless identified in subparagraph (d) below, the following items, including all related equipment and remote control devices, if any, are deemed fixtures and shall convey, included in the Purchase Price free of liens:
      •   Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
      •   All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
      •   Antennas; satellite dishes and receivers
      •   Basketball goals and play equipment (permanently attached or in-ground)
      •   Ceiling and wall-attached fans; light fixtures (including existing bulbs)
      •   Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
      •   Floor coverings (attached)
      •   Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement. **NOTE:** Seller's use, removal or resale of fuel in any fuel tank is subject to Seller's obligation under Paragraph 8(c) of the Offer to Purchase and



REALTOR®   Individual agent initials __DN__    Seller initials _____ _____

STANDARD FORM 101
Revised 7/2018
© 7/2018

Phone:                    Fax:
Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Contract (form 2-T) to provide working, existing utilities through the earlier of Closing or possession by Buyer.
- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors

- Storage shed; utility building
- Swimming pool (excluding inflatable); spa; hot tub
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and drapery rods and brackets, door and window screens and combination doors, awnings and storm windows

(b) **Items Leased or Not Owned:** Any item which is leased or not owned by Seller, such as fuel tanks, antennas, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:

_____
_____ .

(c) **Other Fixtures/Unspecified items:** Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of liens.

(d) **Other Items That Do Not Convey:** The following items shall not convey (*identify those items to be excluded under subparagraphs (a) and (c)*):_____
_____ .

Seller shall repair any damage caused by removal of any items excepted above.

4.    **PERSONAL PROPERTY.** The following personal property shall be transferred to Buyer at no value at Closing:
**none**
_____

5.    **HOME WARRANTY.** Seller ☐ agrees ☐ does not agree to obtain and pay for at settlement a one year home warranty for the Property at a cost not to exceed $ _____ . If Seller agrees to obtain and pay for a home warranty at any time, Firm hereby discloses that a fee of _____ will be offered to Firm by the person or entity through or from which any home warranty is obtained as compensation to Firm for its assistance in obtaining the home warranty, and Seller hereby consents to Firm's receipt of such fee.

6.    **LISTING PRICE.** Seller lists the Property at a price of $ _____ on the following terms:
☑ Cash ☐ FHA ☐ VA ☐ USDA ☑ Conventional ☐ Loan Assumption ☐ Seller Financing ☐ Other _____ .
Seller agrees to sell the Property for the Listing Price or for any other price or on any other terms acceptable to Seller.

7.    **FIRM'S COMPENSATION.**
(a)    **Fee.** Seller agrees to pay Firm a total fee of _____ % of the gross sales price of the Property, OR

("Fee"), which shall include the amount of any compensation paid by Firm as set forth in paragraph 8 below to any other real estate firm, including individual agents and sole proprietors ("Cooperating Real Estate Firm").
(b)    **Fee Earned.** The Fee shall be deemed earned under any of the following circumstances:
(i)    If a ready, willing and able buyer is procured by Firm, a Cooperating Real Estate Firm, the Seller, or anyone else during the Term of this Agreement at the price and on the terms set forth herein, or at any price and upon any terms acceptable to the Seller;
(ii)    If the Property is sold, optioned, exchanged, conveyed or transferred, or the Seller agrees, during the Term of this Agreement or any renewal hereof, to sell, option, exchange, convey or transfer the Property at any price and upon any terms whatsoever; or
(iii)    If the circumstances set out in (i) or (ii) above have not occurred, and if, within _____ days after the Expiration Date ("Protection Period"), Seller either directly or indirectly sells, options, exchanges, conveys or transfers, or agrees to sell, option, exchange, convey or transfer the Property upon any terms whatsoever, to any person with whom Seller, Firm, or any Cooperating Real Estate Firm communicated regarding the Property during the Term of this Agreement or any renewal hereof, provided the names of such persons are delivered or postmarked to the Seller within 15 days after the Expiration Date. HOWEVER, Seller shall NOT be obligated to pay the Fee if a valid listing agreement is entered into between Seller and another real estate broker and the Property is subsequently sold, optioned, exchanged, conveyed or transferred during the Protection Period.

STANDARD FORM 101
Revised 7/2018
© 7/2018

Individual agent initials DN   Seller initials _____ _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

(c) **Fee Due and Payable.** Once earned as set forth above, the Fee will be due and payable at the earlier of:

    (i)   Closing on the Property;

    (ii)   The Seller's failure to sell the Property (including but not limited to the Seller's refusal to sign an offer to purchase the Property at the price and terms stated herein or on other terms acceptable to the Seller, the Seller's default on an executed sales contract for the Property, or the Seller's agreement with a buyer to unreasonably modify or cancel an executed sales contract for the Property); or

    (iii)   Seller's breach of this Agreement.

(d) **Transfer of Interest in Business Entity.** If Seller is a partnership, corporation or other business entity, and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a fee or commission in connection with such sale or transfer, the Fee shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid by Seller at the time of the transfer.

(e) **Additional Compensation.** If additional compensation, incentive, bonus, rebate and/or other valuable consideration ("Additional Compensation") is offered to the Firm from any other party or person in connection with a sale of the Property, Seller will permit Firm to receive it in addition to the Fee. Firm shall timely disclose the promise or expectation of receiving any such Additional Compensation and confirm the disclosure in writing before Seller makes or accepts an offer to sell. (NOTE: NCAR Form #770 may be used to confirm the disclosure of any such Additional Compensation).

(f) **Attorney Fees and Costs.** If Firm is the prevailing party in any legal proceeding brought by Firm against Seller to recover any or all of the Fee, Firm shall be entitled to recover from Seller reasonable attorney fees and court costs incurred by Firm in connection with the proceeding.

**8.**    **COOPERATION WITH/COMPENSATION TO OTHER FIRMS.** Firm has advised Seller of Firm's company policies regarding cooperation and the amount(s) of any compensation that will be offered to other brokers, including but not limited to, seller subagents, buyer agents or both, brokers who do or do not participate in a listing service and brokers who are or are not REALTORS®. Seller authorizes Firm to (*Check ALL applicable authorizations*):

    ❑  Cooperate with subagents representing the Seller and offer them the following compensation: _____ % of the gross sales price or $ _____ ; and/or,

    ❑  Cooperate with buyer agents representing the buyer and offer them the following compensation: _____ % of the gross sales price or $ _____ ; and/or,

    ❑  Cooperate with and compensate other Cooperating Real Estate Firms according to the Firm's attached policy.

Firm will promptly notify Seller if compensation offered to a Cooperating Real Estate Firm is different from that set forth above. Agents with Cooperating Real Estate Firms must orally disclose the nature of their relationship with a buyer (subagent or buyer agent) to Firm at the time of initial contact with Firm, and confirm that relationship in writing no later than the time an offer to purchase is submitted for the Seller's consideration. Seller should be careful about disclosing confidential information because agents representing buyers must disclose all relevant information to their clients.

**9.**    **FIRM'S DUTIES.** Firm agrees to provide Seller the benefit of Firm's knowledge, experience and advice in the marketing and sale of the Property. Seller understands that Firm makes no representation or guarantee as to the sale of the Property, but Firm agrees to use its best efforts in good faith to find a buyer who is ready, willing and able to purchase the property. In accordance with the REALTORS® Code of Ethics, Firm shall, with Seller's approval, in response to inquiries from buyers or Cooperating Real Estate Firms, disclose the existence of offers on the Property. Where Seller authorizes disclosure, Firm shall also disclose whether offers were obtained by the individual agent who signs this Agreement, another agent of the Firm, or by a Cooperating Real Estate Firm. Seller acknowledges that real estate brokers are prohibited by N.C. Real Estate Commission rule from disclosing the price or other material terms contained in a party's offer to purchase, sell, lease, rent or option real property to a competing party without the express authority of the party making the offer.

Seller acknowledges that Firm is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which the Firm knows or reasonably should know, and that REALTORS® have an ethical responsibility to treat all parties to the transaction honestly. Seller further acknowledges that Firm is being retained solely as a real estate professional, and understands that other professional service providers are available to render advice or services to Seller, including but not limited to an attorney, insurance agent, tax advisor, surveyor, structural engineer, home inspector, environmental consultant, architect, or contractor. Although Firm may provide Seller the names of providers who claim to perform such services, Seller understands that Firm cannot guarantee the quality of service or level of expertise of any such provider. Seller agrees to pay the full amount due for all services directly to the service provider whether or not the transaction closes. Seller also agrees to indemnify and hold Firm harmless from and against any and all liability, claim, loss, damage, suit, or expense that Firm may incur either as a result of Seller's selection and use of any such provider or Seller's election not to have one or more of such services performed.

STANDARD FORM 101
Revised 7/2018
© 7/2018

Individual agent initials ___DN___   Seller initials _____ _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**THE AGENT (FIRM) SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT. FURTHER, REALTORS® HAVE AN ETHICAL DUTY TO CONDUCT SUCH ACTIVITIES WITHOUT RESPECT TO THE SEXUAL ORIENTATION OR GENDER IDENTITY OF ANY PARTY OR PROSPECTIVE PARTY TO THIS AGREEMENT.**

10. **MARKETING.**

(a) **Commencement of Marketing.** The Firm is authorized to commence marketing the Property as described in subparagraph (b) below on the Effective Date OR, if selected ☐ on (insert date only if applicable) _____ ("Delayed Marketing Date").

---

**NOTE: If a Delayed Marketing Date is selected, Seller understands and acknowledges the following:**

- THE PROPERTY MAY NOT BE SHOWN BY ANY REAL ESTATE AGENT, INCLUDING FIRM'S AGENTS, PRIOR TO THE DELAYED MARKETING DATE.
- FIRM IS OBLIGATED TO PRESENT TO SELLER ANY OFFERS ON THE PROPERTY THAT MAY BE SUBMITTED TO FIRM PRIOR TO THE DELAYED MARKETING DATE.
- IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST. ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.

---

(b) **Marketing Authorization.** Seller authorizes Firm *(Check ALL applicable sections)*:

☒ **Signs.** To place "For Sale," "Under Contract," "Sale Pending," or other similar signs on the Property (where permitted by law and relevant covenants) and to remove other such signs.

☒ **Open Houses.** To conduct open houses of the Property at such times as Seller and Firm may subsequently agree.

☒ **Listing Service.** To submit pertinent information concerning the Property to any listing service of which Firm is a member or in which any of Firm's agents participate and to furnish to such listing service notice of all changes of information concerning the Property authorized in writing by Seller. Seller authorizes Firm, upon execution of a sales contract for the Property, to notify the listing service of the pending sale and the expiration date of any due diligence period, and upon closing of the sale, to disseminate sales information, including sales price, to the listing service, appraisers and real estate brokers.

☒ **Lock/Key Boxes.** The Seller ☒ does ☐ does not authorize Firm to place lock/key boxes on the Property.

☒ **Advertising Other Than On The Internet.** To advertise the Property in non-Internet media, and to permit other firms to advertise the Property in non-Internet media to the extent and in such manner as Firm may decide.

☒ **Internet Advertising.** To display information about the Property on the Internet either directly or through a program of any listing service of which the Firm is a member or in which any of Firm's agents participate. Seller further authorizes other firms who belong to any listing service of which the Firm is a member or in which any of Firm's agents participate to display information about the Property on the Internet in accordance with the listing service rules and regulations, and also authorizes any listing service of which the Firm is a member or in which any of Firm's agents participate to use, license or sell to others information about the Property entered into the listing service. Seller specifically authorizes the display of the address of the Property, automated estimates of the market value of the Property and third-party comments about the Property. If seller desires to limit or prohibit Internet advertising as set forth above, seller must complete an opt-out form in accordance with listing service rules.

---

**NOTE: NCAR Form #105 may be used to limit or prohibit Internet advertising and explains how such limitations may or may not be effective.**

---

(c) **"Coming Soon" Advertising.** ☐ (Check only if applicable). If applicable, Firm is authorized to market the Property as "Coming Soon," commencing on the Effective Date, in any media Firm may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☐ are not attached to this Agreement.

(d) **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services selected above will facilitate the showing and sale of the Property, there are risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of the Firm, including but not limited to:

(i) unauthorized use of a lock/key box,

(ii) control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property

(iii) inappropriate use of information about the Property placed on the Internet or furnished to any listing service in which the Firm participates, and

Page 4 of 10

Individual agent initials ___DAL___   Seller initials _____  _____

(iv) information about the Property placed on the Internet by or through any listing service in which the Firm participates which is inaccurate or dated.

Seller therefore agrees to release and discharge Firm and Firm's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Firm's negligence arising directly or indirectly out of any such marketing services.

---

**WARNING:** IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION. If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

---

11. **EARNEST MONEY.** Unless otherwise provided in the sales contract, any initial and additional earnest money deposits and any other earnest monies paid in connection with any transaction shall be held by the Firm, in escrow, until the consummation or termination of the transaction. Any earnest money forfeited by reason of the buyer's default under a sales contract shall be divided equally between the Firm and Seller. In no event shall the sum paid to the Firm because of a buyer's default be in excess of the fee that would have been due if the sale had closed as contemplated in the sales contract. In accordance with NC General Statutes Section 93A-12, if a dispute regarding the return or forfeiture of any earnest money deposit arises between Seller and the buyer, the escrow agent holding the deposit may deposit the disputed monies with the appropriate Clerk of Court following written notice to the parties. In the event of any such dispute, Seller directs Firm to disclose Seller's last known mailing address to the escrow agent upon request to enable the escrow agent to comply with the notice requirement of such law.

12. **SELLER REPRESENTATIONS.**

(a) **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☐ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☐ does not currently maintain flood hazard insurance on the Property.

(b) **Synthetic Stucco.** To the best of Seller's knowledge, the Property has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

_____

(c) **Owners' Association.** (Complete ONLY if the Property is subject to regulation and/or assessment by an owners' association.)
(i) ☐ The Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owners' association or the association manager is: _____

Owners' association website address, if any: _____
The name, address and telephone number of the president of the owners' association or the association manager is: _____

Owners' association website address, if any: _____
(ii) ☐ New Construction or the Residential Property and Owner's Association Disclosure Statement is NOT required: Seller agrees to promptly complete an Owners' Association Disclosure and Condominium Resale Statement Addendum (Standard Form 2A12-T) at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(iii) Seller authorizes and directs any owners' association or any management company of the owners' association to release to Firm true and accurate copies of the following items affecting the Property, including any amendments:
- Seller's statement of account
- master insurance policy showing the coverage provided and the deductible amount
- Declaration and Restrictive Covenants
- Rules and Regulations
- Articles of Incorporation
- Bylaws of the owners' association
- current financial statement and budget of the owners' association
- parking restrictions and information
- architectural guidelines

(d) **Termite Bond.** To the best of Seller's knowledge there ☐ is ☐ is not a termite bond on the Property. If there is a termite bond, it ☐ is ☐ is not transferable. If transferable, the transfer cost is $ _____ , and the bonding company is:

_____

Page 5 of 10

Individual agent initials _____   Seller initials _____ _____

STANDARD FORM 101
Revised 7/2018
© 7/2018

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

(e) **Ownership.** Seller represents that Seller
☐ has owned the Property for at least one year;
☐ has owned the Property for less than one year
☐ does not yet own the Property

If Seller does not yet own the Property, Seller agrees to promptly provide Firm information pertaining to Seller's acquisition of the Property, such as a copy of a sales contract or option for the Property, and to keep Firm timely informed of all developments pertaining to Seller's acquisition of the Property.

(f) **Receipt of Sample Forms.**
☐ Seller acknowledges receipt of a sample copy of an Offer to Purchase And Contract (form 2-T) or Offer to Purchase and Contract–New Construction (form 800-T), as may be appropriate for review purposes.
☐ Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election form (form #760) for review purposes.

(g) **Current Liens.** Seller represents to the best of Seller's knowledge:
(1) The Property ☐ is ☐ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
(i) There is a first deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $ _____    Lender Phone#: _____
Lender Address: _____
(ii) There is a second deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $ _____    Lender Phone#: _____
Lender Address: _____
(iii) There is a deed of trust or mortgage on the Property securing an equity line of credit held by:
Lender Name: _____
Approximate balance: $ _____    Lender Phone#: _____
Lender Address: _____
(2) Seller is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.
(3) Seller is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.
(4) There are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmen's liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.
(5) There are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.
(6) There are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.
(7) Specify any information, including approximate balances, required by Seller representations (2) through (6) above

| NOTE: Outstanding liens may affect Seller's net proceeds |: _____

_____

(h) **Bankruptcy.** Seller currently:
(1) ☐ is ☐ is not under bankruptcy protection under United States law.
(2) ☐ is ☐ is not contemplating seeking bankruptcy protection during the term of this Agreement.
(i) **Access.** Seller represents that the Property has legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☐ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Firm information pertaining to any such agreement.
(j) **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☐ is not subject to any lease(s). If applicable:
(i) Seller agrees to promptly provide Firm a copy of any such lease(s) or a written statement of the terms of any oral lease(s);
(ii) If the Property is managed by someone other than Seller, the manager's name and contact information is as follows:
Seller authorizes any such manager to release and disclose to Firm any relevant information about any leases(s) and to cooperate with Firm in the sale of the Property.
(k) **FHA Appraisal.** To the best of Seller's knowledge, an FHA appraisal ☐ has ☐ has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.

| NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing. |

Page 6 of 10

Individual agent initials JN    Seller initials _____ _____

STANDARD FORM 101
Revised 7/2018
© 7/2018

(l)  **Special Assessments.** To the best of Seller's knowledge, there are no Proposed or Confirmed Special Assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any): _____

(m)  **Manufactured (Mobile) Home.** Complete ONLY if there is a manufactured (mobile) home(s) on the Property that Seller intends to include as a part of the sale of the Property: VIN(s): _____ or ☐ VIN(s) unknown. Other description (*year, model, etc.*): _____

(n)  **Fuel Tank/Fuel:** To the best of Seller's knowledge, there ☐ is ☐ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*
Ownership of tank 1: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor is:
_____

| | |
|---|---|
| Location of tank 1: | ☐ above ground ☐ below ground |
| Type of fuel: | ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____ |
| Refilling schedule: | ☐ auto-refill (*insert frequency*): _____ ☐ other (*describe*): _____ |

Name and contact information of fuel vendor: _____
Ownership of tank 2: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor is:
_____

| | |
|---|---|
| Location of tank 2: | ☐ above ground ☐ below ground |
| Type of fuel: | ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____ |
| Refilling schedule: | ☐ auto-refill (*insert frequency*): _____ ☐ other (*describe*): _____ |

Name and contact information of fuel vendor: _____
If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 12 are incorrect or no longer accurate, Seller shall promptly notify Firm and cooperate with Firm in taking appropriate corrective action.

13.  **SELLER'S DUTIES.** Seller agrees to cooperate with Firm in the marketing and sale of the Property, including but not limited to:
(a)  providing to Firm, in a timely manner, accurate information including but not limited to the following:
(i)  Residential Property and Owner's Association Disclosure Statement (unless exempt);
(ii)  Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt); and
(iii)  Lead-Based Paint or Lead-Based Paint Hazard Addendum with respect to any residential dwelling built prior to 1978.
(b)  making the Property available for showing (including working, existing utilities) at reasonable times and upon reasonable notice;
(c)  providing Firm as soon as reasonably possible after the execution of this Agreement copies of the following documents (where relevant) in the possession of Seller:
(1)  restrictive covenants affecting the Property;
(2)  bylaws, articles of incorporation, rules and regulations, and other governing documents of the owners' association and/or the subdivision;
(3)  title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust and easements relating to the Property.

Seller authorizes (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Firm, (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Firm, and (3) the owners' association manager (or other authorized representative) to release and disclose copies of all documents referenced in subparagraphs (c)(1) and (c)(2) above. Seller acknowledges and understands that Firm is under no obligation to acquire any of the information referenced in this subparagraph (c) or to verify the accuracy of any such information that may be provided to Firm.

(d)  immediately referring to Firm all inquiries or offers it may receive regarding the Property; showing the Property only by appointment made by or through Firm; and conducting all negotiations through Firm;
(e)  executing and delivering at settlement a GENERAL WARRANTY DEED conveying fee simple marketable title to the Property, including legal access to a public right of way, free of all encumbrances except ad valorem taxes for the current year, utility easements, rights-of-way, and unviolated restrictive covenants, if any, and those encumbrances that the buyer agrees to assume in the sales contract.

Seller represents that the Seller has the right to convey the Property, and that there are currently no circumstances that would prohibit the Seller from conveying fee simple marketable title as set forth in the preceding sentence, except as follows (*insert N/A if not applicable*): _____

**NOTE:** If any sale of the Property may be a "short sale," consideration should be given to attaching NCAR form 104 as an addendum to this Agreement.

Individual agent initials  DN  Seller initials _____  _____

STANDARD FORM 101
Revised 7/2018
© 7/2018

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

(f) providing Firm in a timely manner any information necessary (including any information submitted under Paragraph 12) to enable Firm to prepare an estimate of Seller's net proceeds at settlement. Seller acknowledges and understands that any such estimate is an approximation only and that Seller should verify the accuracy of the calculations.

(g) if required by N.C.G.S. §44A-11.1, timely designating a Lien Agent, and providing Firm as soon as reasonably possible a copy of the appointment of Lien Agent.

**14. HOME INSPECTION:** Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☐ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this agreement.

☐ Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

**15. PHOTOGRAPHS AND OTHER MATERIALS:** Firm is specifically authorized to use, for any purposes whatsoever, any and all photographs, drawings, video, advertising copy or other information obtained by or provided to Firm pursuant to this Agreement (including but not limited to any information concerning the price and terms of the sale of the Property, the description of the Property and the length of time the Property is on the market) ("Materials"), both before and after the sale or, in the event there is not a sale, after this Agreement has expired. Seller shall not have or acquire any rights to use any of the Materials created by, on behalf of, or at the direction of Firm or an agent of Firm either during or after the Term of this Agreement without Firm's written consent. If Seller provides any Materials to Firm ("Seller Materials"), Seller represents that Seller owns the Seller Materials or otherwise has the legal right to provide the Seller Materials to Firm, and Seller grants to Firm and any listing service in which Firm or its agents participate a non-exclusive, perpetual license to use the Seller Materials, including the rights to display, reproduce, distribute or make derivative works from the Seller Materials. Seller agrees to indemnify and hold Firm and its agents harmless for any and all claims resulting from use of the Seller Materials under the terms of this license.

**16. ADDITIONAL TERMS AND CONDITIONS.** The following additional terms and conditions shall also be a part of this Agreement: The listing agreement and any sale of the property is subject to and conditioned upon approval by the United States Bankruptcy Court.

**17. DUAL AGENCY.** Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Firm becomes interested in viewing the Property. Firm may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Firm acts.

(a) Disclosure of Information. In the event Firm serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Firm shall not disclose to the other party the following information:

(1) that a party may agree to a price, terms, or any conditions of sale other than those offered;

(2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

(3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute or rule.

(b) Firm's Role as Dual Agent. If Firm serves as agent for both Seller and a buyer in a transaction involving the Property, Firm shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Firm shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

(1) Prior to the time dual agency occurs, Firm will act as Seller's exclusive agent;

(2) In its separate representation of Seller and buyer, Firm may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Firm;

(3) Firm is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Firm shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(c) Seller's Role. Should Firm become a dual agent, Seller understands and acknowledges that:

(1) Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Firm;

(2) Seller is fully aware of and understands the implications and consequences of Firm's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

(3) Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

(4) Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Firm become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Firm's role as a dual agent. Seller shall have a duty

STANDARD FORM 101
Revised 7/2018
© 7/2018

Individual agent initials DN   Seller initials _____ _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

    (d)  Authorization *(initial only ONE)*.

\_\_\_\_\_  \_\_\_\_\_  Seller authorizes the Firm to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 17.

\_\_\_\_\_  \_\_\_\_\_  Seller desires exclusive representation at all times during this agreement and does NOT authorize Firm to act in the capacity of dual agent. *If Seller does not authorize Firm to act as a dual agent, the remainder of this paragraph shall not apply.*

    (e)  Designated Agent Option *(Initial only if applicable)*.

\_\_\_\_\_  \_\_\_\_\_  Seller hereby authorizes the Firm to designate an individual agent(s) to represent the Seller. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

> **NOTE:** When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of the Firm in connection with the transaction or if designated agency is otherwise prohibited by law.

18.  **MEDIATION.** If a dispute arises out of or related to this Agreement or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation before resorting to arbitration, litigation, or some other dispute resolution procedure. If the need for mediation arises, the parties will choose a mutually acceptable mediator and will share the cost of mediation equally.

19.  **WIRE FRAUD WARNING.**

> **IF SELLER'S PROCEEDS WILL BE WIRED, IT IS RECOMMENDED THAT SELLER PROVIDE WIRING INSTRUCTIONS AT CLOSING IN WRITING IN THE PRESENCE OF THE ATTORNEY. IF SELLER IS UNABLE TO ATTEND CLOSING, SELLER MAY BE REQUIRED TO SEND AN ORIGINAL NOTARIZED DIRECTIVE TO THE CLOSING ATTORNEY'S OFFICE CONTAINING THE WIRING INSTRUCTIONS. THIS MAY BE SENT WITH THE DEED, LIEN WAIVER AND TAX FORMS IF THOSE DOCUMENTS ARE BEING PREPARED FOR SELLER BY THE CLOSING ATTORNEY. AT A MINIMUM, SELLER SHOULD CALL THE CLOSING ATTORNEY'S OFFICE TO PROVIDE THE WIRE INSTRUCTIONS. THE WIRE INSTRUCTIONS SHOULD BE VERIFIED OVER THE TELEPHONE VIA A CALL TO SELLER INITIATED BY THE CLOSING ATTORNEY'S OFFICE TO ENSURE THAT THEY ARE NOT FROM A FRAUDULENT SOURCE.**
>
> **SELLER SHOULD CALL THE CLOSING ATTORNEY'S OFFICE AT A NUMBER THAT IS INDEPENDENTLY OBTAINED. TO ENSURE THAT SELLER'S CONTACT IS LEGITIMATE, SELLER SHOULD NOT RELY ON A PHONE NUMBER IN AN EMAIL FROM THE CLOSING ATTORNEY'S OFFICE, SELLER'S REAL ESTATE AGENT OR ANYONE ELSE.**
>
> **Seller acknowledges and understands that there are risks associated with wire transfers that are not within the reasonable control of Firm, and Seller hereby agrees to release and discharge Firm and Firm's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by gross negligence of Firm or Firm's agents arising directly or indirectly out of any wire transfer Seller sends or receives/was to receive in connection with any real estate transaction in which Firm represents Seller.**

**STANDARD FORM 101**
**Revised 7/2018**
**© 7/2018**

Individual agent initials  _DN_  Seller initials  _____  _____

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**20. ENTIRE AGREEMENT/CHANGES/TERMINATION.** This Agreement constitutes the entire agreement between Seller and Firm and there are no representations, inducements, or other provisions other than those expressed herein. This Agreement may be signed in multiple originals or counterparts, all of which together constitute one and the same instrument. All changes, additions, or deletions to this Agreement must be in writing and signed by both Seller and Firm. Seller acknowledges and understands that this Agreement constitutes a binding contract between Seller and Firm. Although Seller may at any time withdraw from the fiduciary relationship existing between Seller and Firm, the contract created by this Agreement may not be terminated by Seller or Firm prior to its Expiration Date without legally sufficient cause. Any such termination shall be by mutually-acceptable written agreement signed by both Seller and Firm. **Seller and Firm each acknowledge receipt of a signed copy of this Agreement.**

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

Seller: _____ **James Overstreet, BK Trustee** _____   _____   _____
　　　　　　　　　　Print Name　　　　　　　　　　　　　　Signature　　　　　　　　　Date

Contact Information: _____   _____   _____   _____
　　　　　　　　　　Home　　　　　　　　Work　　　　　　Cell　　　　　　　Email

Mailing Address: _____

Seller: _____ **of Roger Jancaitis** _____   _____   _____
　　　　　　　　　　Print Name　　　　　　　　　　　　　　Signature　　　　　　　　　Date

Contact Information: _____   _____   _____   _____
　　　　　　　　　　Home　　　　　　　　Work　　　　　　Cell　　　　　　　Email

Mailing Address: _____

Entity Seller: _____
　　　　　　(Name of LLC/Corporation/Partnership/Trust/etc.)

By: _____   Date: _____

Name: _____   Title: _____

Contact Information: _____   _____   _____   _____
　　　　　　　　　　Home　　　　　　　　Work　　　　　　Cell　　　　　　　Email

Mailing Address: _____

Firm: _____ **CAROLINA EAGLE REAL ESTATE, LLC** _____   Phone: **(252) 794-2008**
　　　　　　　　Print Real Estate Firm Name

By: _____   _____ **214353** _____   **01/08/2019**
　　　　Individual Agent Signature　　　　Individual License Number　　　　Date
　　　　**Dalton Nicholson**
Office: **CAROLINA EAGLE REAL ESTATE, LLC**

Address: **608 S Granville st, Windsor, NC   27983**

Office Phone: **(252) 794-2008** _____ Fax: **(252) 794-4006** _____ Email: **carolinaeagle@embarqmail.com**

STANDARD FORM 101
Revised 7/2018
© 7/2018

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**Exhibit B**

UNITED STATES BANKRUPTCY COURT
Southern DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| | : | Case No. 18-11542-SDB |
| | : | |
| Debtor | : | |
| Roger Jancaitis | : | |
| | : | |

**DECLARATION OF PATRICK BUTLER IN SUPPORT OF APPLICATION
TO RETAIN BK GLOBAL REAL ESTATE SERVICES TO PROCURE CONSENTED
PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330**

The undersigned, Patrick Butler ("Declarant") hereby states:

1. I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"), which is an entity duly licensed as a real estate brokerage by the State of Florida located at 1095 Broken Sound Parkway, N.W., Suite 100, Boca Raton, FL 33487. I am Applicant's broker-in-charge and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of the annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2. Based upon the information discussed below, I believe that Applicant is a disinterested person and does not hold or represent any interest adverse to the interest of the Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3. To the best of my knowledge: (a) neither BKRES nor any of its employees has any connection with the Debtor, its creditors in this case, the Chapter 7 Trustee, the Office of the United States Trustee, or any employees thereof or any party in interest herein; (b) BKRES and each of its employees are "disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

4.      A description of the qualifications of, and services provided by, BKRES is attached as Schedule 1.

5.      That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

6.      That I further understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation, as it deems appropriate.

Verified under penalty of perjury that the foregoing is true and correct this _7_ day of January, 2019.

Patrick Butler
Broker-in-Charge

The foregoing instrument was sworn to and subscribed before me this _7_ day of January 2019, by Patrick Butler who provided identification or is personally known to me and who did take an oath.

NOTARY PUBLIC

Notary Public, State of Florida

My Commission Expires



Notary Public State of Florida
Sharon Beatrice Sirois
My Commission FF 198000
Expires 02/04/2019

## SCHEDULE I

BK Global Real Estate Services is a licensed real estate brokerage by the State of Florida, located at 1095 Broken Sound Parkway N.W., Suite 100, Boca Raton, Florida, 33487.

BK Global Real Estate Services has a strong background and extensive experience in dealing with the mortgage servicing industry and is considered an expert in assisting in the negotiations with secured creditors whose debt is in excess of the market value of the real property and in negotiating short sales.

BK Global Real Estate Services has been providing real estate services to Chapter 7 bankruptcy trustees since 2014.

BK Global Real Estate Services has developed a process to assist Chapter 7 trustees in the sale of over-encumbered real estate to obtain the consent of the secured creditor to allow the Chapter 7 trustee to sell the real property and to assist the Chapter 7 trustee in negotiating a carve out for the bankruptcy estate that will provide a meaningful distribution to the unsecured creditors..

BK Global Real Estate Services is to be retained by the Chapter 7 trustee pursuant to 11 U.S.C. § 327. The first step is for BK Global Real Estate Services to assist the Chapter 7 trustee in obtaining the consent of the secured creditor to allow the Chapter 7 trustee to sell the secured real estate. Those negotiations will include establishing a carve-out of the sale proceeds to the bankruptcy estate that will provide a meaningful distribution to unsecured creditors.

In addition, a carve out will be established to pay a real estate commission to BK Global Real Estate Services and a local real estate licensed broker. In addition, as part of the negotiations, the secured creditor will be required to waive the filing of any deficiency claim.

Once the Court has approved the retention of BK Global Real Estate Services and the local real estate licensed broker, then the real property will be listed for sale at an agreed listing price by the secured creditor.

A motion will be filed to approve the settlement and compromise reached between the Chapter 7 trustee and the secured creditor.

BK Global Real Estate Services has successfully assisted Chapter 7 trustees in 33 court districts in the consented program. BK Global Real Estate Services does this by achieving the highest sale prices for properties as opposed to the more common "discounted sale" often presented to secured creditors by less experienced service providers. The transaction is never consummated unless the carve-out percentage or fee is sufficient to provide a meaningful distribution to unsecured creditors. BK Global Real Estate Services has standards in the mortgage industry whereby all parties can have a mutually beneficial outcome to the sale. The sale of over-encumbered real estate in bankruptcy presents a superior outcome to all parties.

- Unsecured creditors achieve a meaningful distribution on many more bankruptcy cases than they do on 'no asset' cases;

- The Chapter 7 trustee is able to conduct these transactions in a very cost-effective manner substantiating the carve-out amounts generated in these sales; and

- Secured creditors achieve more favorable recovery than they would via foreclosure including minimized compliance risk.

Page 4-2 of the Handbook for Chapter 7 Trustee states that by virtue of 11 U.S.C. § 323(a) the trustee is a representative of the estate. Further, the handbook states, "The trustee is a fiduciary charged with protecting the interest of all estate beneficiaries – namely, all classes of creditors, including those holding secured, administrative, priority and non-priority unsecured claims, as well as the debtor's interest in exemptions and in any possible surplus property."

BK Global Real Estate Services is a licensed Real Estate Broker and acts in the capacity as a licensed agent/broker. As a member of the real estate professional association, BK Global Real Estate Services is permitted to work with local brokers and share fees for work conducted. Section 504(b) of the Bankruptcy Code permits the compensation BK Global Real Estate Services receives for work conducted on a case.

BK Global Real Estate Services has developed a nationwide network of licensed real estate brokers that are trained in the sale of over-encumbered real estate in bankruptcy. BK Global Real Estate Services co-lists the real estate with one of our local trained licensed brokers. The trustee hires both BK Global Real Estate Services and the local broker to perform the required services. The listing commission is split between BK Global Real Estate Services and the local broker.

For these fees, both BK Global Real Estate Services and the local broker share in the duties that are required to conduct a consented sale in bankruptcy.

BK Global Real Estate Services' services include, but are not limited to, the following:

- Researching the real estate, running title and lien searches to identify creditors for resolution and any title issues;
- Advising the trustee of any issues and discuss potential resolutions;
- Conducting the resolutions under the trustee's direction;
- Assisting the trustee in the collection of documents and information for employment;
- Making contact with the secured creditor(s);
- Notifying them of the upcoming sale and identifying servicer requirements;
- Assisting the trustee in establishing market value and negotiating with the servicer an acceptable sales price and establishing a carve-out;
- Development of online marketing, email campaign and full nationwide marketing services;
- Conducting on online sale;
- Use of the technology platform;

- Assist the trustee in the review of all offers and coordinate the final documentation of the offer accepted by the trustee;
- Managing contract requirements such as inspections, appraisals and HOA applications;
- Coordinating closings and assisting the trustee in the collection of required information for court filing; and
- Closing the transaction and ensure the estate has received the appropriate funds.

Local broker services include, but are not limited to:

- Inspecting the property and completing a broker's price opinion;
- Listing the property in the multiple listing service (MLS); and
- Posting a for sale sign in the yard and coordinating showings.

U.S. Bankruptcy Court Districts where BK Global Real Estate Services conducted Consented Sales:

- Eastern District of Arkansas
- Central District of California
- Eastern District of California
- Southern District of California
- District of Colorado
- District of Connecticut
- Middle District of Florida
- Southern District of Georgia
- District of Hawaii
- Northern District of Illinois
- Northern District of Indiana
- Southern District of Indiana
- Western District of Kentucky
- Eastern District of Louisiana
- Middle District of Louisiana
- Western District of Louisiana
- District of Massachusetts
- District of Maryland
- Eastern District of Michigan
- Eastern District of North Carolina
- District of New Jersey
- District of Nevada
- Eastern District of New York
- Northern District of Ohio
- Southern District of Ohio
- District of Oregon
- Eastern District of Pennsylvania

- Middle District of Pennsylvania
- Western District of Pennsylvania
- Northern District of Texas
- Western District of Texas
- Western District of Washington

**Exhibit C**

16

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA

In re:                                                  **Case No. 18-11542**
                                                        **Chapter 7**
**Roger Jancaitis**

_____
       **Debtors**            /
_____

## AFFIDAVIT OF DALTON NICHOLSON IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND CAROLINA EAGLE REAL ESTATE LLC TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

STATE OF NORTH CAROLINA     )
                            )
COUNTY OF Bertie            )

       Dalton Nicholson, being duly sworn, says:

     1.      I am a real estate agent duly licensed by the State of North Carolina.

     2.      I am an agent of Carolina Eagle Real Estate LLC a North Carolina Corporation, with corporate offices located at 608 S Granville St Windsor, NC 27983, ("Listing Agent").

     3.      I am familiar with the Application to Retain Carolina Eagle Real Estate LLC, filed by the Trustee ("Application") and the property described therein.

     4.      I believe that I am experienced and qualified to represent the Trustee in connection with the marketing and sale of the real property located at 1303 CROW TRAIL EDENTON, NC 27932 (the "Property").

     5.      Carolina Eagle Real Estate LLC has agreed to accept employment pursuant to the terms and conditions set forth in the Application and the proposed commission structure. Based upon my experience and knowledge of the real estate market, I believe that the commission structure proposed to be paid to Listing Agent does not exceed customary commissions in the applicable geographical area and are reasonable for the type of employment proposed.

1

6.      Neither I nor any member of Carolina Eagle Real Estate LLC hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

7.      To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtors, their creditors, or any other party in interest or their respective attorneys or accountants, the U. S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

8.      I represent no interest adverse to the Debtors or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Dalton Nicholson of
Carolina Eagle Real Estate LLC

The foregoing instrument was sworn to and subscribed before me this 26th day of December , 2018.

NOTARY PUBLIC

_____
Notary Public, State of North
Carolina

Anita Conner Blythe
Type, Stamp, or Print Name as
Commissioned

2